

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2000 JUN 16  A 8: 20

LORETTA G. WHYTE

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

WILLIAM PECK                                              CIVIL ACTION

VERSUS                                                   NO. 00-0360

BURL CAIN WARDEN, ET AL                                  SECTION "L"(1)

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to Title 28, United States Code, Section 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).[1] Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)), or, the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and, the facts underlying the claim show by clear and convincing evidence that but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

1

JUN 16 2000

DATE OF MAILING



DATE OF ENTRY
JUN 1 6 2000

Fee
Process
X Dktd
CtRmDep
Doc.No.

## BACKGROUND

Petitioner, William Peck, is an inmate incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On January 6, 1995, petitioner was found guilty by a jury of one count of manslaughter in violation of La.Rev.Stat.Ann. § 14:31 (West 2000).[2] On January 25, 1995, the petitioner pled guilty to being a triple felony offender and, in accordance with La.Rev.Stat.Ann. § 15:529.1 (West 2000), the trial court sentenced him to serve thirty five (35) years at hard labor with credit for time served.[3]

On January 15, 1997, the Louisiana Fourth Circuit Court of Appeal affirmed petitioner's conviction and amended his sentence to allow the petitioner to be eligible for parole.[4] Petitioner was denied rehearing on March 18, 1997.[5] Petitioner applied for supervisory and/or remedial writs with the Louisiana Supreme Court on April 15, 1997.[6] On October 3, 1997, the Louisiana Supreme Court denied petitioner's application.[7]

On August 20, 1998, the petitioner filed an application for post-conviction relief with the trial court.[8] On January 29, 1999, petitioner field a writ of mandamus with the Louisiana Fourth

---

[2] State Rec., Vol. III of III.

[3] State Rec., Vol. III of III.

[4] State v. Peck, 686 So.2d 188 (La. App. 4 Cir. 1997). State Rec., Vol. II of III.

[5] State Rec., Vol. I of III, p. 29. State Rec., Vol. III of III, petitioner's application for rehearing.

[6] State Rec., Vol. I of III, p. 10.

[7] State v. Peck, 701 So.2d 197 (La. 1997); State Rec., Vol. I of III.

[8] State Rec., Vol. I of III.

2

Circuit requesting the court to compel the trial court to render a decision on his application for post-conviction relief.[9]   The Louisiana Fourth Circuit denied petitioner relief.[10]   On April 9, 1999, petitioner applied for supervisory and/or remedial writs with the Louisiana Supreme Court.[11]   On April 26, 1999 the trial court ruled on the merits and denied petitioner's application for post-conviction relief.[12]   On May 4, 1999, petitioner supplemented his application to the Louisiana Supreme Court.[13]   On September 3, 1999, the Louisiana Supreme Court denied petitioner relief.[14]

Petitioner's request for federal *habeas corpus* relief was filed on January 24, 2000.[15] In support of his application, the petitioner claims that:

> 1. The petitioner was denied due process when: a) the prosecutor presented testimony to the grand jury in a prejudiced manner; b) the state failed to provide exculpatory material to the defense in a timely manner; and c) the prosecutor knowingly used perjured testimony;
>
> 2. Petitioner was denied effective assistance of counsel when his

---

[9] State Rec., Vol. I of III. Petitioner's application for writ of mandamus.

[10] State Rec., Vol. I of III.  Petitioner requested clarification on this ruling.  The Louisiana Fourth Circuit responded in a letter dated March 31, 1999 stating that they had found the petitioner's claims for post-conviction relief lacked merit.

[11] State Rec., Vol. I of III. Petitioner's brief in support of his application for supervisory and/or remedial writs.

[12] State Rec., Vol. III of III.

[13] State Rec., Vol. III of III. Petitioner's motion to rule moot the trial court's judgment.

[14] State Rec., Vol. III of III.

[15] Rec. Doc. 1. This date represents the earliest date that petitioner could have presented his application for federal *habeas* relief to prison officials for mailing to this Court and, therefore, the earliest date that this Court could deem his *habeas* petition to have been filed for statute of limitations purposes. See Cooper v. Brookshire, 70 F. 3d 377, 379 (5th Cir. 1995)(citing Houston v. Lack, 487 U.S. 266, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988)).

counsel failed to file timely for pre-trial discovery and failed to file a motion to suppress;

3. The identification of the petitioner was unduly suggestive; and

4. The petitioner was denied due process because the prosecution improperly withheld its evidence of motive for the crime that was revealed only when the grand jury transcripts were disclosed to the defense and jury near the end of the trial.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law. Drinkard v. Johnson, 97 F.3d 751, 767 (5th Cir. 1996), cert. denied, 520 U.S. 1107 , 117 S. Ct. 1114, 137 L.Ed.2d 315 (1997), overruled in part on other grounds, Lindh v. Murphy, 521 U.S.320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).[16] As to questions of fact, the amended statute "permits federal court relief if the state court adjudication of the claim 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence.'" Id. (citing 28 U.S.C. § 2254(d)(2)). As to questions of law, "a federal court may grant habeas relief only if it determines that a state court's decision rested on a legal determination that was contrary to . . . clearly established Federal law, as determined by the Supreme Court." Id. at 768. The United States Supreme Court in Williams v. Taylor, ____ U.S. ____, 112 S.Ct. 1495, 1523.

_____

[16] The Fifth Circuit also noted in Drinkard that the threshold question in review under the amended statute is whether the claim raised by the petitioner was adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and not be in "procedural default" on a claim. Drinkard v. Johnson, 97 F.3d at 766; 28 U.S.C. § 2254(e)(2). In this case, the state does not contest the fact that petitioner has exhausted state court remedies. The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. Id.; § 2254(e)(1).

\_\_\_\_ L.Ed.2d \_\_\_\_ (2000) (O'Connor, J., for the Court) has explained:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite of that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies the principle to the facts of the prisoner's case.

Using these standards, the Court now reviews the merits of petitioner's claim.

### Claims One and Four: Denial of Due Process

Petitioner contends that he was denied due process when the state allowed testimony at the grand jury proceeding to be presented in a prejudicial manner, when it failed to disclose exculpatory material, when it allowed perjured testimony, and when it withheld its evidence of motive.

The state refers to the statement of facts by the Louisiana Fourth Circuit Court of Appeal:

> On September 7, 1994, Cynthia Steward asked her neighbor, Charles Neustadter, to walk to the grocery store with her and to carry a watermelon back to her house. Mr. Neustadter agreed, and the two set off from Alabo Street down Galvez Street to the corner of Tupelo Street where the store is located. The defendant, who was standing on Galvez Street, approached them as they waked toward the store, and he spoke briefly to Charles Neustadter. Steward did not know the defendant by name at that time, but she recognized him from seeing him around the neighborhood. After buying the watermelon, Steward and Neustadter were again approached by the defendant who was now carrying a lead pipe. He asked Neustadter if the pipe was about the size of a 2 x 4 they needed, and Neustadter answered that it was. Steward and Neustadter resumed their walk toward her house, but suddenly the defendant appeared behind Neustadter and hit him in the back of the head with the pipe; Neustadter fell "like a tree" on his face, unconscious. Defendant fled the scene and Steward ran and

asked a neighbor to call the police. Neustadter died a short time later.

Detective Gary Marchese arrived at the scene of the murder at 10:37 a.m. on September 7, 1994; he found Cynthia Steward there and interviewed her. The detective saw a large pipe in a grassy area nearby. He took Ms. Steward to the homicide office where she made statement. The detective later received tips from several anonymous callers, and on the basis of a nickname he received, he compiled a photographic lineup. When Cynthia Steward was shown the lineup, she identified the photograph of the defendant as the perpetrator. Soon after, Det. Marchese secured an arrest warrant; however, the defendant had already turned himself in.

When Dr. Paul McGary, an expert in forensic pathology, autopsied Charles Neustadter, he found that Mr. Neustadter died as a result of a neck fracture. The doctor concluded from the injuries he observed that the victim received one very hard blow across the back of his neck.

Mrs. Stephanie Magee testified that the defendant was with her all day on September 7, 1994. She said he arrived about 6:30 a.m. and stayed until late in the afternoon. During the day they watched several talk shows and soap operas. When the news came on, they learned of the murder on Galvez Street, and because she realized that the crime occurred very near the defendant's home, Mrs. Magee called the defendant's house to see if anyone there knew of the circumstances.[17]

The state trial court reviewed petitioner's first contention that the prosecution presented information to the grand jury in a prejudicial manner. In his application for federal *habeas corpus* relief, petitioner contends that because the grand jury only heard Ms. Steward's testimony, and did not know of her prior contradictory statement given to police, he was prejudiced. He argues that because the grand jury was not informed of these prior inconsistence statements, they were unable to exercise the requisite independent judgment when they voted to indict the petitioner. The trial court, in its judgment dated April 26, 1999, found that:

---

[17] State v. Peck, No. 95-2341, slip op. at 1-2 (La. App. 4 Cir. 1997); State Rec., Vol. II of III.

The evidence at issue are allegedly inconsistent statements given by an eyewitness, Cynthia Stewar[d].  After reviewing the statements and testimony of Ms. Stewar[d], this Court is not of the opinion that these inconsistencies are of such significance so as to undermine the confidence in the jury's verdict, much less the Grand Jury's indictment.[18]

The petitioner further contends in his first and fourth claims for federal *habeas corpus* relief that his conviction was unfairly obtained because the prosecution failed to inform the defense of all contradictory statements made by the state's one eyewitness, Cynthia Steward prior to trial.[19] The petitioner claims that Ms. Steward made contradictory statements concerning: (1) whether she knew the defendant, (2) whether the defendant and victim talked before the offense, and (3) whether she knew of any motive for the crime.  Specifically, petitioner argues that he was denied due process because these contradictory statements were only revealed when the grand jury transcripts were disclosed to the defense and the jury during the trial.

These issues were reviewed at length by the trial court in its ruling on petitioner's application for post-conviction relief and the Louisiana Fourth Circuit on direct appeal.  Both courts found little merit to petitioner's allegations that exculpatory material was withheld or that the statements were both material and prejudicial. The Fourth Circuit concluded that the petitioner had failed to satisfy even his initial burden that the materials were not provided to the defense and also failed to show the requisite prejudice caused by the manner in which the statements were provided to the defense. The Louisiana Fourth Circuit found:

---

[18] State Rec., Vol. I of III, judgment p. 1.

[19] It is uncontested that prior to the cross-examination of Ms. Steward the defense was given all statements made by the witness.  The petitioner's counsel was also given time to review the material prior to cross-examination. Rec. Docs. 1, 7.

The United States Supreme Court has held that "the suppression of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." Brady v. Maryland, supra.  See also, C.Cr.P. art. 718. The prosecution, however, does not have the duty to provide defense counsel with unlimited discovery of the State's case.  United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392 (1976).

Evidence is material and, therefore, discoverable if there is a "reasonable probability" that the outcome of the trial would have been different had the evidence been disclosed to the defense.  United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375 (1985).  Yet, the mere possibility that undisclosed information might have helped the defense or affected the outcome of trial doses not establish the materiality of that information.  United States v. Agurs, supra.  The undisclosed information must be considered in the context of the entire record, and, if there is no reasonable doubt about the defendant's guilt regardless of this evidence, there is no justification for a new trial.  State v. Marshall, 94-0461 (La. 9/5/95), 660 So.2d 819, 825-826; State v. Duncan, 94-1045 (La. App. 4th Cir. 12/28/94), 648 So.2d 1090, 1098, writ denied 95-0662 (La. 6/30/95), 657 So.2d 1028; State v. Paul, 499 So.2d 1288 (La. App. 4th Cir. 1986), writ denied, 503 So.2d 475 (La. 1987).

The defense asserts that under Kyles v. Whitley, (514) U.S. (419), 115 S.Ct. 1555 (1995), his motion for a new trial should have been granted.  In Kyles v. Whitley, the Supreme Court reexamined four aspects of materiality, and the Louisiana Supreme Court summarized that discussion in State v. Marshall, 94-0461, (La. 9/5/95), 660 So.2d 819.  For a showing of materiality, the first question is not whether the disclosure of the suppressed evidence would have resulted in the defendant's acquittal, but rather given the absence of that information, whether he received a fair trial.  The reviewing court must ask if the suppression of evidence "undermines confidence in the outcome of the trial."  Kyles, 115 S.Ct. at 1566; Marshall, 660 So.2d at 825.  Secondly, a showing of materiality is not the equivalent of a sufficiency of the evidence test.  Thirdly, once the reviewing court has applied Bagley[20] and found constitutional error, no harmless error analysis is applicable because the "reasonable

---

[20]Bagley "established that, regardless of whether a request is made, 'evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different'."  State v. Marshall, 660 So.2d at 825, citing U.S. v. Bagley, 473 U.S. at 682, 105 S.Ct. at 3383.

probability" of a different result "necessarily entails the conclusion that the suppression . . .had substantial . . . effect". Kyles, 115 S.Ct. at 1566; Marshall, 660 So.2d at 826. Lastly, the evidence should be considered collectively rather than item by item. Kyles, 115 S.Ct. at 1567; Marshall, 660 So.2d at 826.

The inconsistent statements at issue here were given by Cynthia Steward on four occasions: at trial on direct examination; when she made a statement to Detective Marchese on September 7, 1994; when she testified before the grand jury on October 27, 1994; and when she testified at the hearing on the motion to suppress the identification on November 30, 1994. After her testimony on direct examination at trail, the defense attorney asked to see relevant sections of her grand jury testimony and her statement to the detective.

The defense attorney was given first the pertinent parts of the grand jury testimony and shortly thereafter the entire grand jury transcript as well as Steward's statement to the detective. Then the trial court took a recess so that the attorney could review the documents. (All of the information was also given to the jury to read). At that time the defense attorney asked for a mistrial on the basis that he should have been given the material prior to trial because it was Brady information and also because he would have prepared a different defense strategy with the information.

This assignment lacks merit because all of the testimony at issue was given to the defense attorney, and he was able to cross-examination the witness on the inconsistencies at trial; furthermore, none of the testimony the defense complains of is relevant to a material issue, and therefore it is not Brady information. However, because the statements of Cynthia Steward contain some discrepancies, we will fully discuss each area of contradiction set out by the defense.

The first inconsistency concerns the number of times Cynthia Steward saw the defendant prior to the crime. In her statements to the detective, she said she had seen him "[a]bout six or seven times, the boy stay [sic] in the neighborhood somewhere." To the grand jury, Ms. Steward said she had seen the defendant "[m]aybe once or twice," but when she was asked "would [he] go by your house?", she answered, "Yeah. I saw him about two or three times, maybe."

On cross-examination when she was confronted with these discrepancies, Ms. Steward said, "I always say that I have seen him a few times. And that's all I've seen him – a few times. But it's more than once or twice; the boy lives in my neighborhood."

Although the only eye-witness to the crime did appear

9

uncertain about how many times she had seen the defendant, her statements are not contradictory; she always indicated that she was uncertain of the number of times she had seen him, but she was sure that she recognized him from the neighborhood. This evidence does not appear to be material, and therefore, under <u>Brady</u> the State had no duty to disclose it.

The second discrepancy concerned whether there was a conversation between the victim and the defendant. At trial during direct examination, Ms. Steward said that she and Charles Neustadter were walking down the street when Mr. Neustadter stopped to talk to the appellant, and then on the way back home, Mr. Neustadter again spoke with him. The defendant "mentioned something about the size of a 2 x 4. I guess that they needed for that piece of glass or whatever they were going to get."

In her statement to the detective, when she was asked whether words were exchanged between the victim and the group of men standing on the corner among whom was the defendant, she answered, "On the way he was talking to one boy, but that boy wasn't standing on that corner." The questioner then asked specifically if the boy who hit Charles was on the corner, and she answered that he was not on the corner. When asked, if he (the defendant) said anything to her, she answered, "No, he just ran."

However, at the hearing on the motion to suppress the identification on November 30, 1994, Ms. Steward said, "Well, they had a conversation where this occurred. On the way to the store he talked and he talked to him on the way back from the store." In the grand jury testimony[21] given to the defense attorney, Ms. Steward made three statements about the conversations between the defendant and the victim. She was questioned about the subject of the conversation the two had, and she responded, "Evidently they had been working on the job together during that week. They was going pick up a glass for something, and he ask Charles "Are you ready to go pick up the glass?" He said, "I'm going get a watermelon right now. Wait until I come back.""

Again, when she was asked if anyone else said anything, Ms. Steward answered, "No, other than Charles told him yeah, that's about the size of the two-by-four they needed."

---

[21]The State submitted two accounts of the grand jury testimony: One, with some statements are blacked-out is the grand jury testimony first given to the defense attorney; the second was all of Ms. Stewart's testimony and it too was given to the defense attorney prior to cross-examination.

Although the statements in the grand jury testimony are far more detailed, at the trial and at the hearing on the motion to suppress the identification, Ms. Steward consistently reported that the appellant said something to the victim as he walked to the store and then again as he walked back before the attack. Her statement to the detective is almost unintelligible.

While her statement to the detective could be considered ambiguous, the several statements concerning conversations are not contradictory; rather they range from curt suggestions to full explanations. Moreover, the statements made at the hearing on the motion indicates that some conversations between the victim and the assailant occurred prior to the crime. The defense attorney should have known that the victim and the defendant spoke prior to the crime because he represented the defendant at the motion as well as at trial.

Defense counsel argues that the defendant was prejudiced by the late disclosure of these statements. However, he had one statement prior to trial, and he never indicates how the late disclosure prejudiced him or how the early disclosure would [have] ensured the appellant a fair trial. Furthermore, the trial court gave over the grand jury testimony and the statement to the detective even though the information does not appear to be material.

The defense points to the defendant's possible motive as the third area of contradictory statements. No motive was suggested in the direct testimony at trial, in the statement to the detective, or in the testimony at the hearing. In the complete version of the grand jury testimony given to the defense attorney, when Ms. Steward was asked, "Did he [the defendant] give any warning, say anything to Charles when he came behind him?", she answered,
"When he came behind him, he was reaching the pipe back. He say, 'Broke in my house, huh?' Wop! 'You ain't going to break in nothing else,' and he took off it."The questioner asked if those words were spoken as "he was swinging the pipe?", and Stewart said, "Yeah. He say, 'You broke in my house, huh? You ain't going to break in nothing else.' By the time he say you break in nothing else, he had done hit Charles already."

The defense complains that this is <u>Brady</u> material which was withheld from him. However, it was not withheld; the defense attorney had the entire grand jury testimony of Ms. Steward prior to his cross-examination of her. Furthermore, the information is not exculpatory; it indicates that the defendant thought the victim had harmed him. It is hard to understand how disclosure of this information would have been helpful to the defendant.

Because the State disclosed all the information at issue, there

11

is no merit to the defendant's contention that he suffered any prejudice. The defense attorney was able to point out to the jury what he perceived as discrepancies in the statements given by Ms. Steward so that the jury could evaluate her credibility. It does not appear that the trial court erred in denying the motion for a new trial. [22]

Petitioner further contends that he was denied due process when the state withheld exculpatory material and allowed perjured testimony by Detective Marchese regarding his role in the development and identification of the perpetrator. This claim was correctly found to be "unimpressive" by the trial court.[23]

Having reviewed the record, petitioner has failed to show that the decision rendered by the Louisiana Fourth Circuit Court of Appeal and/or the state trial court "was based on an unreasonable determination of the facts in light of the evidence" or "that a state court's decision rested on a legal determination that was contrary to . . . clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1) and (2). Petitioner's claim is, therefore, without merit.

## Claim Two: Ineffective Assistance of Counsel

Petitioner alleges that he was denied effective assistance of counsel in that his trial counsel failed to timely request discovery or file a motion to suppress the evidence. In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A convicted defendant seeking relief must demonstrate that counsel's performance was deficient and

---

[22] State v. Peck, No. 95-2341, slip op. at 5-11 (La. App. 4 Cir. 1997); State Rec., Vol. II of III.

[23] State Rec., Vol. I of III, judgment p. 1-2.

12

that the deficient performance prejudiced his or her defense. See Strickland, 466 U.S. at 697, 104 S. Ct. at 2069. If a court finds that petitioner has made an insufficient showing as to either of these two prongs of inquiry, i.e., deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. Id.

Petitioner carries the burden of proof and must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986) (citations omitted); Hayes v. Maggio, 699 F.2d 198, 201-02 (5th Cir. 1983); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985). Under the deficient performance prong of the Strickland test, "it is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371, 113 S. Ct. 838, 844, 122 L. Ed. 2d 180 (1993) (quoting Strickland, 466 U.S. at 690, 104 S. Ct. at 2066). "An attorney's performance, which enjoys a strong presumption of adequacy, is deficient if it is objectively unreasonable." United States v. Acklen, 47 F.3d 739, 742 (5th Cir. 1995). The petitioner must prove that the conduct of trial counsel fell below the constitutional minimum guaranteed by the Sixth Amendment. See United States v. Faubion, 19 F.3d 226, 228 (5th Cir. 1994) (citation omitted). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstance. See Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.

In order to prove prejudice under the Strickland standard, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. The Strickland court defined a reasonable probability as "a probability sufficient to undermine confidence

13

in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine the "relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Petitioner raised this issue in his application for post-conviction relief with the state trial court. The trial court reviewed the record and found:

> This Court concludes that Mr. Peck has not satisfied either of the criteria required to make a Strickland showing. In looking back at the manner in which counsel represented applicant, both at trial and in pre-trial proceedings, this Court does not agree that his performance fell below a reasonable standard. Similarly, given that trial counsel obtained the impeachment materials in time to employ them and did in fact cross-examine the witnesses with these materials, means that Peck did not suffer any prejudice even had counsel been ineffective in not maintaining the materials earlier.[24]

Again, this Court finds that petitioner has failed to show that the decision rendered by the state trial court "was based on an unreasonable determination of the facts in light of the evidence" or "that a state court's decision rested on a legal determination that was contrary to . . . clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1) and (2). The trial court correctly applied Strickland to the facts at issue.

### Claim three: Improper Identification

Petitioner contends that the identification made by Ms. Steward was unduly suggestive. His allegation consist of revisiting the contradictions in Ms. Steward's statements enumerated in claims one and four. Regarding this issue, the trial court found:

> Peck recycles the same impeachment material discussed above vis-a-vis Cynthia Steward, but this time he attempts to employ

---

[24] State Rec., Vol. I of III, judgment p. 1.

14

it in challenging the reliability of the identification procedure.  This argument is utterly meritless.[25]

An identification should be suppressed if the identification was suggestive and there was a likelihood of misidentification in the identification procedure.  Manson v. Brathwaite, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977).  It is the likelihood of misidentification and not the suggestive lineup *per se* that is violative of due process.  Neil v. Biggers, 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972).  Petitioner alleges that the lineup was suggestive because only one person, the petitioner, was from the neighborhood.  Clearly, this is not an element that makes a line-up suggestive and this claim should be dismissed.[26]

### RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition of William Peck for *habeas corpus* relief be **DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass  v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

---

[25] State Rec., Vol. I of III, judgment p. 2.

[26] In this claim, petitioner continues to point out the variances in Ms. Steward's statements.  This Court refers to its findings in the first claim as to any allegations of denial of due process.

New Orleans, Louisiana, this *15* day of *June*, 2000.

SALLY SHUSHAN
UNITED STATES MAGISTRATE JUDGE